UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:18-cv-00070-FDW

| | | |
|---|---|---|
| BILLY JOSEPH EDWARDS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| ERIK A HOOKS, | ) | |
| | ) | |
| Respondent. | ) | |

**THIS MATTER** is before the Court upon Respondent's Motion for Summary Judgment (Doc. No. 6.) Also before the Court is Petitioner's "Request for Execution of Writ Order of Release." (Doc. No. 12.)

## I.     BACKGROUND

Petitioner is a prisoner of the State of North Carolina, who, on January 13, 2016, was convicted by a Graham County Superior Court jury of felonious possession of stolen goods or property and felonious safecracking. The North Carolina Court of Appeals ("NCCOA") summarized the facts of the case, as follows:

> The State presented evidence tending to show on 14 May 2014, a safe was stolen from the home of Donna and Scott Rutland. The safe contained the Rutlands' personal documents, such as deeds, titles, birth certificates, and papers from Scott's father. The Rutlands knew Defendant prior to the break-in. Donna testified Defendant had never been inside the Rutlands' home and she had never told Defendant where the safe was located.
>
> The Rutlands lived next door to Heather Gogan and Tim Sellers, who regularly visited the Rutlands. A few weeks before the break-in, Heather had visited Donna. Donna testified Heather saw and inquired about the Rutlands' safe, which was located inside the bedroom closet. Heather and Tim also visited the Rutlands two nights before the break-in. That evening, Scott mentioned his father had recently passed away and left him some money.

1

On the morning of 14 May 2014 at approximately 6:15 a.m., Scott was preparing to leave for work when an individual he did not recognize approached and asked him for a ride. Scott refused and the individual walked back toward Heather and Tim's home. Scott observed Defendant, who was walking around the corner of Heather and Tim's home, begin to argue with that individual. Defendant never entered the Rutlands' yard, and Scott did not see Heather or Tim prior to leaving for work that morning.

Scott walked back inside and told Donna to lock the doors and "stay safe, [Defendant] and all is out here." Scott left for work around 6:30 a.m. Donna left shortly thereafter to go to work from 8:00 a.m. to 3:00 p.m. Donna did not observe Defendant present in Heather and Tim's yard at any point that morning.

When Donna returned home from work, she discovered her home had been broken into. Officer Chad Hall responded to the scene and conducted an initial investigation. Officer Hall spoke with Heather, Tim, and other neighbors, who said they did not notice anything out of the ordinary.

At the time of Officer Hall's initial investigation, there were no known suspects, and neither Donna nor Scott noticed anything was missing. It was not until the Rutlands' nephew, Spencer Branham, returned the safe that they realized it had been stolen. Many of the documents contained in the safe were missing upon the safe's return.

The State also called Michelle and Dennis Anderson as witnesses. Dennis and Michelle lived in a two-story apartment, and Michelle's son, Tanner Pilkington, lived on the second floor. Michelle testified Defendant arrived at her apartment around 3:00 p.m. on 14 May 2014 with the safe and carried it into the backyard. Defendant eventually brought the opened safe into the Andersons' living room. Neither Michelle nor Dennis saw Defendant open the safe. Michelle testified Defendant was surprised when he found only personal documents located inside, because he had believed the safe contained $15,000 in cash.

While Defendant rifled through the safe's contents, Michelle observed the Rutlands' names on several of the documents. Defendant burned the documents and did not take the safe with him upon leaving the Andersons' apartment. Tanner knew Spencer Branham, Donna's nephew, and called him to come pick up the safe. Spencer testified he did not recognize the safe, but delivered the safe back to the Rutlands' home. Spencer never observed Defendant and the safe present together in the same place.

While Defendant was in jail, Scott visited Defendant with Defendant's father. Scott testified Defendant stated he did not take the safe from the Rutlands' home. Defendant asserted Heather and Tim had given him the safe in exchange for drugs.

Defendant admitted he had taken the safe to the Andersons' apartment, but claimed Dennis had opened the safe. This conversation was monitored, recorded by Detective Jones, and played for the jury. Detective Jones affirmed to the jury Defendant's voice was on the recording. The recorded conversation included Defendant's statement admitting he traded "Thad [sic] Gogan for half a gram of drop for that safe."

State v. Edwards, 796 S.E.2d 537, 2017 WL 897711, at \*1-\*2 (N.C. Ct. App. 2017) (unpublished table decision).

At the close of the State's evidence, the defense moved to dismiss all the charges for lack of substantial evidence. Id. at \*2. The trial court denied the motion and instructed the jury on the charges of breaking and entering, felonious larceny after breaking and entering, felonious possession of stolen goods or property, and felonious safecracking. Id. Over the defense's objection, the trial court also instructed the jury on the theory of acting in concert. Id.

The jury found Petitioner not guilty of felonious breaking and entering and not guilty of felonious larceny after breaking and entering but guilty of felonious possession of stolen goods or property and of felonious safecracking. Id. Defendant pled guilty to having attained habitual felon status. Id. The trial court consolidated the safecracking and possession of stolen property convictions into one judgment and sentenced Petitioner as an habitual felon to a minimum term of 84 months and a maximum term of 113 months. Edwards, 796 S.E.2d at \*2.

Petitioner appealed, and on March 7, 2017, the North Carolina Court of Appeals ("NCCOA") reversed Petitioner's safecracking conviction, vacated the consolidated judgment, and remanded for re-sentencing on the remaining possession of stolen goods conviction as an habitual felon. Id. at \*4. As Petitioner only appealed his conviction for safecracking, the NCCOA found no error in his conviction for felonious possession of stolen goods/property. Id.

While his direct appeal was pending, Petitioner filed various miscellaneous pro se

petitions in both the NCCOA and the North Carolina Supreme Court ("NCSC"), which were dismissed. (Pet'r's Exs., Doc. No. 1-1 at 17, 20-21, 84-85.) On or about February 17, 2017, Petitioner filed a pro se state habeas corpus petition in the Superior Court of Graham County. (Pet'r's State Habeas Pet., Doc. No. 1-1 at 39-50.) It was denied on the merits by written order on May 5, 2017. (Order Deny State Habeas Pet., Doc. No. 1-1 at 37-38.) Petitioner did not seek review of the trial court's order in the NCCOA or NCSC.

Petitioner was re-sentenced on June 29, 2017, to 78-106 months imprisonment for possession of stolen goods as an habitual felon. (Resent. J. & Commit. Form, Resp't's Ex. 5, Doc. No. 7-6.) Petitioner did not appeal his sentence.

On or about August 29, 2017, Petitioner filed a pro se motion for appropriate relief ("MAR") in the Superior Court of Graham County. (MAR, Doc. No. 1-1 at 93-125.) It was summarily denied on September 21, 2017. (Order Deny. MAR, Doc. No. 1-1 at 126.) Petitioner did not seek certiorari review of the court's order in the NCCOA.

Petitioner filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 15, 2018. (Doc. No. 1.) Respondent filed an Answer/Response (Doc. No. 5) and the instant Motion for Summary Judgment (Doc. No. 6). Subsequent to notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) (Doc. No. 8), Petitioner filed a Response in opposition to the summary judgment Motion (Doc. No. 9), followed thereafter by an Addendum (Doc. No. 10) and a Declaration (Doc. No. 11). He later filed a "Request for Execution of Writ Order of Release." (Doc. No. 12.)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c)(2); <u>United States v. Lee</u>, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248–49 (1986).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief may be granted to a state prisoner only if the state court's last adjudication of a claim on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). To obtain relief under § 2254(d)(1), a petitioner "is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' " <u>Woods v. Donald</u>, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011)).

### III. DISCUSSION

#### A. Fatal Variance Claim

In Ground One, Petitioner claims there was a fatal variance between his indictment for felonious possession of stolen goods and one of the jury instructions. (§ 2254 Pet. 5, Doc. No. 1.) According to the Petition, "[t]he prosecution proceeded to trial on the accusation that defendant (alone) committed Counts 1-4. "After" the jury found not guilty of B&E – Larceny –

5

Counts 1 and 2 – the court made evidence itself that Defendant "acted in concert" and possessed knowledge – of same – fatal to the indicted charge." (§ 2254 Pet. 5 (citing "State v. Gobblett [sic]").) Suffice it to say, this ground for relief is not a model of clarity. Unfortunately, Petitioner's Response to the summary judgment Motion, his Addendum, and his Declaration do almost nothing to clarify what he is alleging here.

Based upon Petitioner's citation to State v. Goblet, 618 S.E.2d 257 (N.C. Ct. App. 2005), Respondent interprets this ground for relief as alleging "there was a fatal variance between the jury instructions and the indictment for possession of stolen goods, such that once Petitioner was found not guilty of felonious breaking and entering (B&E) and larceny after B&E, he could not be found guilty of possession of stolen goods[.]" (Summ. J. Support. Br. 5, Doc. No. 7.) Petitioner does not dispute Respondent's interpretation of this ground for relief, and the NCCOA vacated the safe cracking conviction, so the only remaining conviction is felonious possession of stolen property. Petitioner asserts that he raised this claim in his MAR (§ 2254 Pet. 5), and in his MAR's first ground for relief, Petitioner asserts, "[State v.] Goblet states . . . That a possession charge pursuant to a Break and Enter, when defendant found not guilty of the Break/Enter, his Possession is arrested and must be vacated: Pursuant to Goblet – id. Your Petitioner is unlawfully, illegally, and unconstitutionally imprisoned" (MAR, Doc. No. 1-1 at 94-95 (verbatim)). Based on the foregoing, the Court finds that Respondent's interpretation of the claim raised in Ground One of the Petition is reasonable.[1]

_____

[1] Although Petitioner raised the substance of this claim in his MAR, it does not appear from the record that he filed a petition for writ of certiorari in the NCCOA seeking review of the trial court's denial of his MAR. Consequently, it does not appear Petitioner has exhausted this claim in the state courts as required by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(b)(1)(A). See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (explaining that in order to exhaust available state remedies, a prisoner must provide all appropriate state courts, including the highest appellate court established to review such claims, a full and fair opportunity to resolve

"A fatal variance occurs "[w]hen . . . the [trial] court, through its instructions to the jury, . . . broadens the bases for conviction beyond those charged in the indictment," constructively amending the indictment.  United States v. Randall, 171 F.3d 195 (4th Cir. 1999) (citing United States v. Redd, 161 F.3d 793, 795 (4th Cir. 1998)).  A constructive amendment is a fatal variance because the indictment is altered "to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment," which violates the Fifth Amendment to the Constitution.  United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991); see United States v. Floresca, 38 F.3d 706, 712-13 (4th Cir. 1994) (en banc).  The Fifth Amendment requirement of indictment by grand jury has yet to be incorporated against the states, however.  See Hartman v. Lee, 283 F.3d 190, 195 n.4 (4th Cir. 2002) ("[T]he Fifth Amendment requirement of indictment by grand jury does not apply to the states).  In other words, a criminal defendant has no federal constitutional right to be charged by indictment in the state courts.  See id.

"[A] federal [habeas] court is limited to deciding whether a conviction [and/or sentence] violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67–68 (1991).  Thus, "[v]ariances and other deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process."  Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985); see also, Stroud v. Polk, 466 F.3d 291, 297 (4th Cir. 2006) (noting the Supreme Court has held "that Due Process and the Sixth

---

federal constitutional claims before those claims are presented through a habeas petition in federal court).  Respondent, however, has not raised exhaustion as a defense to this claim, and the Court will not raise the defense sua sponte as it is evident from his filings that Petitioner does not understand how claims may be exhausted in North Carolina.

Amendment require notice that is sufficient to allow a reasonable defendant to prepare for trial" (citations omitted)).  Accordingly, Petitioner may seek habeas relief only on the grounds that the judge's instructions violated the Fourteenth Amendment's "Due Process [Clause] and the Sixth Amendment require[ment of] notice that is sufficient to allow a reasonable defendant to prepare for trial."  Stroud, 466 F.3d at 297.

Under North Carolina law, the elements of possession of stolen goods/property are: "(1) possession of personal property; (2) which has been stolen; (3) the possessor knowing or having reasonable grounds to believe the property to have been stolen; and (4) the possessor acting with a dishonest purpose."  State v. Tanner, 695 S.E.2d 97, 100 (N.C. 2010) (quoting State v. Perry, 287 S.E.2d 810, 815 (N.C. 1982) (citing, inter alia, N.C.G.S. § 14–71.1 (1982) (internal quotation marks omitted))).  "The crime of possessing stolen goods knowing or having reasonable grounds to believe them to be stolen [in the course of a burglary, a breaking or entering ("B&E"), or a burglary with explosives] is a felony, without regard to the value of the property in question."  N.C. Gen. Stat. § 14–72(c) (2012) (citing N.C. Gen. Stat. § 14–72(b) (citing N.C. Gen. Stat. §§ 14-51, 14-53, 14-54, 14-54.1, and 14-57)).

Plaintiff's indictment for felonious possession of stolen goods/property states:

> The jurors for the State upon their oath present that on or about the date(s) of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did possess a safe and it's contents including numerous documents, the personal property of Donna and Scott Rutland, valued at $400.00, which property was stolen property, knowing and having reasonable grounds to believe the property to have been feloniously stolen, taken and carried away.

(Fel. Poss. Indict., Doc. No. 1-1 at 104.)  The only instruction Petitioner cites in this ground for relief is the instruction given on "acting in concert."  (§ 2254 Pet. 5.)

The trial court instructed the jury that with respect to each of the charged offenses,

> For a person to be guilty of a crime, it is not necessary that he personally do all the acts necessary to constitute the crime.  If two or more persons join in a common purpose -- to commit the crimes of felonious breaking and entering, felonious larceny, felonious possession of stolen goods and/or felonious safecracking, each of them, if actually or constructively present, is not only guilty of that crime if the other person commits the crime but also guilty of any other crime committed by the other in pursuance of the common purpose to commit the crimes of larceny, breaking and entering, possession of stolen goods and/or safecracking or as a natural of [sic] probable consequence thereof.
>
> If you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant acting either by himself -- or acting together with another person committed the act of larceny, breaking or entering, possession of stolen goods and/or safecracking then you would find the defendant guilty.  If you do not so find, you would find the defendant not guilty.

(Trial Tr. 165-166, Resp't's Ex. 6, Doc. No. 7-7.)  Petitioner's claim appears to be that because the indictment does not allege that he acted in concert with anyone else, the instruction on acting in concert allowed the jury to impute someone else's knowledge of the B&E and larceny to him. The MAR court rejected Petitioner's claim on the merits.  (Doc. No. 1-1 at 126.)

In State v. Tanner, the North Carolina Supreme Court held that for a defendant to be guilty of felonious possession of stolen goods obtained through a breaking and entering, the State need not prove that the defendant perpetrated the breaking or entering, but must establish simply,

> that defendant knew or had reasonable grounds to believe the goods were stolen pursuant to a breaking or entering.  A finding by the jury that a defendant did not take part in a breaking or entering but did possess stolen goods with the knowledge or reasonable grounds to believe that the goods were stolen pursuant to a breaking or entering by another is not fatally contradictory.

Tanner, 695 S.E.2d at 100-101 (overruling State v. Marsh, 652 S.E.2d 744 (N.C. Ct. App. 2007), and State v. Goblet, 618 S.E.2d 257 (N.C. Ct. App. 2005)).  "Thus, if a defendant is guilty of possession of stolen goods and also knows or has 'reasonable grounds to believe' that the goods were stolen pursuant to a breaking or entering, the defendant is guilty of felonious possession of stolen goods."  Id. at 100.

The State, then, is not limited to one theory of how a defendant obtained knowledge that the goods in his possession were feloniously stolen.  See e.g. State v. Bartlett, 336 S.E.2d 100, 101–02 (N.C. Ct. App. 1985) ("There may be joint possession of stolen goods by two or more persons if they are shown to have acted in concert.").  Moreover, how a defendant obtained knowledge that the goods in his possession were stolen (e.g. because he stole them himself; because he acted in concert with someone else to steal the goods; because he was given the goods from someone who told him they were stolen; or because the circumstances surrounding his possession gave him reasonable grounds to believe the goods were stolen) is not an essential element of the crime that must be alleged in the indictment, cf. Tanner, 695 S.E.2d at 100 (listing the elements of possession of stolen goods/property).  Finally, the trial court's instruction did not impute knowledge of the B&E or the larceny to Petitioner because the theory of acting in concert required that Petitioner intentionally join with another in a common scheme to commit the crime of felonious possession of stolen goods (Trial Tr. 165-166, Doc. No. 7-7), which itself requires that the goods be stolen in the course of, in this case, a breaking and entering, see N.C. Gen. Stat. §§ 14–72(b) and (c), 14-53, 14-54, 14-54.1.  In short, the "acting in concert" instruction did not "constructively amend" the felonious possession indictment.

Petitioner does not allege that the trial judge's instruction on "acting in concert" resulted in insufficient notice that he was charged with felonious possession of stolen property, in violation of N.C. Gen. Stat. § 14-71.1.  In addition, Petitioner had actual notice that he was accused of feloniously possessing stolen personal property (the safe and its contents) knowing or having reasonable grounds to believe the property was stolen in the course of a B&E because one of his indictments charged him with the B&E and another charged him with larceny of the safe (B&E Indict., Larceny after B&E Indict. Doc. No. 1-1 at 67-68).  That the State was unable to

prove he committed B&E or the larceny of the safe, does not change the fact that Petitioner was on notice that the State would attempt to prove a breaking and entering, the larceny, and his knowledge of both.

In addition, Petitioner does not point to anything in the record indicating confusion over the possession charge or the elements the State had to prove beyond a reasonable doubt. The Court has reviewed the transcript of the charge conference, the charge to the jury, the habitual felon plea, and the sentencing and can find no indication of confusion over the possession charge.

In sum, Petitioner has failed to point to any evidence in the record to support a claim that the trial court's "acting in concert" instruction violated his rights to due process and/or fair notice of the charge against him. Accordingly, he has not demonstrated that the MAR court's rejection of this claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. This claim is denied.

### B.     Ineffective Assistance of Counsel

Petitioner claims trial counsel was ineffective:  1) due to a conflict of interest evidenced by his statement in the transcript that he "was just going along with the prosecution"; 2) refusal to call witness Thad Gogan or any witnesses on his behalf; and 3) counsel refused to object to the trial court's reinstructions that the jury "just use all the charges to get a guilty verdict."  (§ 2254 Pet. 6-7.)  Respondent contends Petitioner raised the substance of this claim in his MAR (Summ. J. Support. Br. 9), but the Court finds that is not the case.  While it is true Petitioner raised the substance of his conflict of interest claim in his MAR (MAR ¶¶ 3-4, Doc. No. 1-1 at 95-96), he did not raise either of his other two ineffective assistance of counsel claims in that state court

pleading.  Because Respondent has not raised exhaustion as a defense to these two claims, the court will consider them de novo.[2]

In Strickland v. Washington, the Supreme Court identified two necessary components of an ineffective assistance of counsel claim.  466 U.S. 668, 687 (1984).  First, "the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  Second, "the defendant must show that the deficient performance prejudiced the defense."  Id.  To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

"[W]hen a petitioner's habeas corpus claim is based on alleged ineffective assistance of counsel[,] . . . [t]he AEDPA standard and the Strickland standard are dual and overlapping, and [the court] appl[ies] the two standards simultaneously rather than sequentially."  Lee v. Clarke, 781 F.3d 114, 123 (4th Cir. 2015), as amended (Apr. 15, 2015) (quoting Richardson v. Branker, 668 F.3d 128, 139 (4th Cir. 2012)) (internal quotation marks omitted).  Because both standards of review are " 'highly deferential' to the state court's adjudication . . ., 'when the two apply in tandem, the review is doubly so.' "  Lee, 781 F.3d at 123 (quoting Richardson, 688 F.3d at 139).

At his original sentencing, the trial court announced its intention to consolidate the possession of stolen property and safecracking charges and impose one sentence, enhanced by

_____

[2] Petitioner's conflict of interest claim also appears to be unexhausted as he did not file a petition for writ of certiorari in the NCCOA seeking review of the trial court's denial of his MAR.  See Boerckel, 526 U.S. at 845.

Petitioner's habitual felon statute.  To accomplish this, the trial court intended to consolidate the possession and safecracking convictions with the habitual felon conviction.  (Trial Tr. 188-189.) The prosecutor pointed out that because the habitual felon conviction is a status offense, it could not be consolidated with either of the substantive offenses.  (Trial Tr. 190.)  Instead, the two substantive offenses had to be consolidated under one case number and the sentence then enhanced by Petitioner's habitual felon status.  (Trial Tr. 189-190.)  Petitioner's objection appears to be that the trial court followed the prosecutor's assertion that the safecracking offense, a Class I felony, should be consolidated under the case number for the felony possession offense (Trial Tr. 190), a Class H felony, the result of which was that he was sentenced at the higher offense level (Pet'r's Resp. to Summ. J. Mot. ¶ 7).  He claims trial counsel was ineffective for "just going along with the prosecution."  (§ 2254 Pet. 6.)

> Under North Carolina's Structured Sentencing Act,
>
> when separate offenses of different class levels are consolidated for judgment, the trial judge is required to enter judgment containing a sentence for the conviction at the highest class.  Accordingly, the trial judge is limited to the statutory sentencing guidelines, set out at N.C.G.S. § 1340.17(c), for the class level of the most serious offense, rather than any of the lesser offenses in that same consolidated judgment.

State v. Shearin, 612 S.E.2d 371, 381 (N.C. Ct. App. 2005) (quoting State v. Tucker, 588 S.E.2d 853, 855 (N.C. 2003) (quotation marks omitted)).  The trial court, then, was required to sentence Petitioner at the Class H level (possession), rather than the lower Class I level (safecracking). See id.  An attorney does not render ineffective assistance by failing to object to the court's correct application of the law.  See e.g., Sharpe v. Bell, 593 F.3d 372, 383 (4th Cir. 2010) ("Counsel is not required to engage in the filing of futile motions").  Regardless, Petitioner cannot demonstrate he was prejudiced by the court's sentence because the NCCOA reversed the safecracking conviction, vacated the consolidated judgment, and remanded for re-sentencing on

the possession of stolen goods conviction.  Edwards, 796 S.E.2d  at *4.  Thereinafter, Petitioner

was resentenced on the possession conviction and the court imposed a sentence lower than the

original.  (Resent. J. & Commit. Form, Doc. No. 7-6.)

In sum, Petitioner has failed to demonstrate that the MAR court's rejection of this

ineffective assistance of counsel claim was either contrary to or based upon an unreasonable

application of clearly established federal law, see § 2254(d), and "was so lacking in justification

that there was an error well understood and comprehended in existing law beyond any possibility

for fairminded disagreement,"  Richter, 562 U.S. at 103.  This claim is denied.

Petitioner's claim that trial counsel was ineffective for refusing to call Thad Gogan or

anyone else as a witness on his behalf is unsupported by any factual allegations.  (§ 2254 Pet. 6.)

The evidence presented at trial was that Petitioner traded Gogan drugs for the safe, thereby

implicating Gogan in the possession of drugs, possession of stolen property, larceny of the safe

and the breaking and entering of the Rutledge's home.  Petitioner's claim relies upon the

speculative assumption that had counsel called him as a witness, Gogan would have testified in a

way that implicated himself and exculpated Petitioner in all these crimes.  This Court cannot

determine whether counsel's failure to call Gogan as a witness fell below an objective standard

of reasonableness, or whether Petitioner was prejudiced, because the claim is based upon

speculative assumptions.  Petitioner must cite some evidence to support his claim of

ineffectiveness for the Court to determine whether the claim has merit.  Because he fails to cite

any evidence to support this claim, or his claim that counsel should have called unspecified

witnesses, these claims shall be denied.

Finally, Petitioner claims that counsel rendered ineffective assistance when, during

deliberations, the jury sent out a note asking a question about the larceny charge, and counsel

14

refused to object to the trial court's reinstructions that the jury "just use all the charges to get a guilty verdict." (§ 2254 Pet. 7.) Petitioner grossly misstates the facts. During deliberations, the jury sent a note to the judge asking about one of the elements of larceny after breaking and entering. (Trial Tr. 171.) With the agreement of both parties, the trial court reread the jury the instructions on felonious larceny after breaking and entering. (Trial Tr. 172, 174-175.) The court did not instruct the jury to "just use all the charges to get a guilty verdict." This claim is denied as frivolous.

### C.      Improper Sentencing/Double Jeopardy

In this ground for relief, Petitioner claims he was improperly sentenced in violation of the Double Jeopardy Clause. Specifically, he asserts: "The Courts/Jury found that Defendant 'did not' B & E – Did Not Larceny – Did Not Safe Crack – did not Act in Concert – did not knowingly possess stolen property – yet – made the element possession the Principle for sentencing Double Jeopardy as to the elements[.]" (§ 2254 Pet. 8 (verbatim).) Liberally construed, the MAR presented the substance of this claim. The trial court denied the claim on the merits.[3]

As an initial matter, the Court must dispense with Petitioner's misstatements of fact. Contrary to his claim, it is unknown whether the jury concluded Petitioner acted in concert with respect to his felonious possession of stolen goods and safecracking convictions; the jury, having found Petitioner guilty of felonious possession of stolen goods, did conclude Petitioner knowingly possessed stolen goods; and the trial court did not "ma[ke] the element possession the

_____

[3] This claim appears to be unexhausted as Petitioner did not file a petition for writ of certiorari in the NCCOA seeking review of the trial court's denial of his MAR. See Boerckel, 526 U.S. at 845.

Principle for sentencing."  As best the Court can tell from his other filings, the gist of Petitioner's

claim is that possession of stolen goods is an element of B&E, larceny after B&E, and

safecracking; 2) because the jury and the NCCOA between them found that he was not guilty of

B&E, larceny after B&E, and safecracking, they necessarily also found he was not guilty of all

the elements of those offenses, including possession of stolen goods; and 3) the trial court

violated his right against double jeopardy by sentencing him for the possession conviction

because possession is an element of safecracking and not a separate offense for which he could

be sentenced; the legislature did not intend for a defendant to be sentenced for both possession of

stolen goods and safecracking.  (Pet'r's Resp. to Summ. J. Mot. ¶ 7; Addendum ¶¶ 8-9, Doc. No.

10.)

        As previously explained, a defendant may be acquitted of B&E and larceny after B&E

and still be found guilty of felony possession of stolen goods.  <u>Tanner</u>, 695 S.E.2d at 100-101.

At issue here, then, is the relationship between the separate statutory offenses of safecracking

and felony possession of stolen goods.

        Petitioner was charged with safecracking by way of the following indictment (relevant

portion):

>       the defendant named above unlawfully, willfully and feloniously did remove a safe
>       which was the property of Donna and Scott Rutland from the premises of 94 Carey
>       Dr., Robbinsville, North Carolina, for the purpose of stealing its contents.

(Safecracking Indict., Doc. No. 1-1 at 69.)  The elements alleged in Petitioner's indictment for

safecracking show he was indicted under N.C. Gen. Stat. § 14-89.1(b), which provides that "[a]

person is . . . guilty of safecracking if he unlawfully removes from its premises a safe or vault for

the purpose of stealing, tampering with, or ascertaining its contents."

        The relevant section of the felonious possession of stolen goods indictment reads:

the defendant named above unlawfully, willfully and feloniously did possess a safe and it's contents including numerous documents, the personal property of Donna and Scott Rutland, valued at $400.00, which property was stolen property, knowing and having reasonable grounds to believe the property to have been feloniously stolen, taken and carried away.

(Felony Poss. Indict., Doc. No. 1-1 at 66.)  Because the possession offense does not require that

the defendant, acting alone or in concert with another, remove the safe or vault from the

premises, the defendant does not have to be found guilty of safecracking to be convicted of

felonious possession of stolen goods.  See e.g., Tanner, 695 S.E.2d at 100-101.  In sum, a

defendant may still be found guilty of felony possession of stolen goods even if he is acquitted

on the underlying offenses of B&E, larceny after B&E, and/or safecracking.

The next question, then, is whether a defendant may be convicted and sentenced for both

safecracking and felonious possession of the stolen safe.  The Double Jeopardy Clause forbids

"successive prosecutions for the same offense as well as the imposition of cumulative

punishments for the same offense in a single criminal trial."  United States v. Shrader, 675 F.3d

300, 313 (4th Cir. 2012) (internal quotation marks omitted).  Here, Petitioner was not subject to

successive prosecutions, so the success of his double jeopardy claim depends upon whether he

was subject to multiple punishments for the same offense.  Whether punishments are multiple

under the Double Jeopardy Clause essentially is one of legislative intent, Ohio v. Johnson, 467

U.S. 493, 499 (1984), in this case the North Carolina legislature's intent.

The North Carolina legislature created the statutory offense of possession of stolen goods

as a substitute for the common law offense of larceny in those situations where the State could

not furnish sufficient evidence that the defendant stole the property.  State v. Hendricksen, 809

S.E.2d 391, 395 (N.C. Ct. App. 2018), disc. review denied, 812 S.E.2d 856 (N.C. 2018) (citing

State v. Perry, 287 S.E.2d 810, 816 (N.C. 1982), overruled in part on other grounds, State v.

Mumford, 699 S.E.2d 911, 916 (2010)).  In Perry, the NCSC explained that prior to the

enactment of N.C. Gen. Stat. § 14-71.1, mere possession of stolen property was not a crime, and

known dealers in stolen goods were going unprosecuted because it was difficult to prove

possession recent enough after larceny to raise the presumption that the dealer stole the property.

287 S.E. 2d at 816.  After reviewing the historical background of § 14-71.1, the court in Perry

determined that the crimes of larceny, receiving, and possession of stolen property are separate

and distinct offenses.  Id.  Nevertheless, the Perry court also concluded that " the Legislature did

not intend to punish an individual for receiving or possession of the same goods that he stole,"

and held that "though a defendant may be indicted and tried on charges of larceny, receiving, and

possession of the same property, he may be convicted of only one of those offenses."  Id.

        Neither Petitioner nor Respondent has cited a case addressing whether the North Carolina

legislature intended to punish an individual for possession of the same safe that the individual

removed for the purpose of stealing its contents.[4]  The Court need not resolve this issue,

however.  Double Jeopardy Clause "does no more than prevent the sentencing court from

prescribing greater punishment than the legislature intended."  Missouri v. Hunter, 459 U.S. 359,

366 (1983).  As noted, Petitioner raised the substance of his "multiple-punishment-for-the-same-

offense" claim in his MAR.  "Where a multiple-punishment-for-single-offense claim of double

jeopardy is made, the first inquiry . . . is whether as a matter of legislative intent there are

involved single or multiple offenses."  Thomas v. Warden, Maryland State Penitentiary, 683 F.2d

_____

[4] The Court notes that in a case in which the defendant argued his convictions of both felonious larceny (for taking a safe and its contents with the intent to deprive the owner permanently), and safecracking (for the removal of the safe for the purpose of stealing its contents), placed him in jeopardy of multiple punishments for the same offense, the NCCOA held that "the legislature clearly intended felonious larceny and safecracking to remain separately punishable offenses" and that the defendant, at a single trial, "may be convicted of both crimes as charged in the indictments."  State v. Strohauer, 351 S.E.2d 823, 828 (N.C. Ct. App. 1987).

83, 84 (4th Cir. 1982). If the claim is based on state offenses, as it is here, federal courts are bound by state court interpretations of state legislative intent. Id. at 85. The trial court denied Petitioner's MAR, including this claim, on the merits, thereby rejecting Petitioner's contention that the legislature did not intend to punish both the safecracking and the possession of the same safe and its contents.[5] This Court is bound by the trial court's interpretation of the state legislative intent, id. at 85, and therefore cannot hold that the trial court's rejection of Petitioner's double jeopardy claim was either contrary to or based on an unreasonable application of clearly established law, see § 2254(d).

### D. Ineffective Assistance of Appellate Counsel

In this ground for relief, Petitioner claims appellate counsel was ineffective for failing to raise the "multiple-punishment-for-single offense" claim on direct appeal. (§ 2254 Pet. 10.) Petitioner raised the substance of this claim in his MAR, and the trial court denied it on the merits.[6]

In order to establish ineffective assistance of appellate counsel, Petitioner must still satisfy the familiar two-part Strickland test, see Evitts v. Lucy, 469 U.S. 387 (1985), plus simultaneous application of the AEDPA standard, see Lee, 781 F.3d at 123. As such, to obtain habeas relief on this claim, Petitioner must demonstrate that the trial court's conclusion that there was no reasonable probability the NCCOA would have vacated his possession conviction, see

---

[5] "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99; see also Richardson v. Branker, 668 F.3d 128, 144 n.19 (4th Cir. 2012) ("[A]ny doubts concerning the breadth of the [state] court's holding must be resolved in favor of the State.").

[6] This claim appears to be unexhausted as Petitioner did not file a petition for writ of certiorari in the NCCOA seeking review of the trial court's denial of his MAR. See Boerckel, 526 U.S. at 845.

Strickland, 466 U.S at 694, "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," Richter, 562 U.S. at 103.

The success of Petitioner's prejudice argument in his MAR depended upon that court concluding that the North Carolina legislature did not intend to punish both safecracking and the possession of the same safe and its contents. As explained previously, to reach such a conclusion, or its converse, the trial court was required to interpret state legislative intent. Consequently, when it rejected Petitioner's assertion that there was a reasonable probability the NCCOA would have vacated his possession conviction had appellate counsel argued the "multiple-punishment-for-single offense" claim, the trial court did so based upon its interpretation of state legislative intent. As also explained previously, this Court is bound by a state court's interpretation of state legislative intent. Thomas, 683 F.2d at 85. Therefore, the Court is bound by the MAR court's conclusion that there was no reasonable probability the NCCOA would have vacated Petitioner's possession conviction and, likewise, cannot hold that the MAR court's determination of this issue "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," Richter, 562 U.S. at 103. This claim is denied.

## IV.    CLAIMS RAISED OUTSIDE THE PLEADINGS

In his Declaration filed subsequent to his Response to the summary judgment Motion, Plaintiff claims for the first time that: 1) the trial court did not have jurisdiction to accept his guilty plea to habitual felon status (Pet'r's Decl. ¶ 6, Doc. No. 11); 2) the trial court did not have jurisdiction over the entire case because the indictment for felonious possession of stolen goods was defective on its face by failing to include many material averments of the crime charged (id.

at ¶¶ 19, 22-26); 3) his right to indictment by a grand jury was violated (id. at ¶¶ 20); and 4) trial and appellate counsel were ineffective for failing to raise and/or preserve these indictment issues (Id. at ¶ 27). Petitioner has not moved to amend his federal habeas Petition to add these claims, and a declaration is not a pleading in which claims for relief may be raised. See Fed. R. Civ. P. 7, 15.

Moreover, because Petitioner failed to exhaust these proposed claims in the state courts before filing his habeas Petition, amendment of the habeas Petition would be futile. See generally United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) (identifying "futility of amendment" as basis for denial of leave to amend in habeas context). The AEDPA provides that a petition for writ of habeas corpus shall not be granted unless the petitioner has exhausted the remedies available in the state courts. See 28 U.S.C. § 2254(b)(1)(A). In order to exhaust available state remedies, a prisoner must provide all appropriate state courts, including the highest appellate court established to review such claims, a full and fair opportunity to resolve federal constitutional claims before those claims are presented through a habeas petition in federal court. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In North Carolina, a petitioner may satisfy the exhaustion requirement of § 2254 by raising the federal constitutional claim in a direct appeal to the NCCOA and in a subsequent petition for discretionary review in the NCSC, or by raising the claim in a motion for appropriate relief before the trial court and in a subsequent petition for a writ of certiorari in the NCCOA. See N.C. Gen. Stat. § 7A–31; N.C. Gen. Stat. § 15A–1422. Petitioner did not raise any of these new claims on direct appeal, and to the extent he raised them in his MAR in the trial court, he did

not subsequently seek certiorari review in the NCCOA.[7]  As such, amendment of the habeas Petition to add these claims would be futile, see Pittman, 209 F.3d at 317, as they would be subject to dismissal for failure to exhaust.  Accordingly, the Court will not consider the claims raised by Petitioner in his Declaration.

## V.  "REQUEST FOR EXECUTION OF WRIT ORDER OF RELEASE"

In this Request, which the Court construes as a Motion, Petitioner asserts that "on or about August 18, 2018, your Petitioner called a challenge to the State's allegations and cross presented true facts and law and is entitled to relief requested" as "[t]he State has not contested and any time for same has expired."  (Doc. No. 12.)  The only filings in the docket that closely conform to that date are Petitioner's Addendum (Doc. No. 10) and his Declaration (Doc. No. 11), which were received by the Clerk of Court on August 20, 2018.

The Federal Rules of Civil Procedure apply to § 2254 proceedings "to the extent that they are not inconsistent with any statutory provisions" or the Rules Governing § 2254 Cases in the United States District Court.  Rules Governing § 2254 Cases, Rule 12.  The Rules Governing § 2254 Cases require the State respond to a Petition for Writ of Habeas Corpus only upon order of the Court.  See id. at Rule 5.  Furthermore, the opening paragraph of the Addendum and the first sentence of the Declaration indicate these documents were filed as additional responses to the

---

[7] That Petitioner may have raised these claims in other types of filings in the NCCOA and/or NCSC (e.g. Writ of Supervisory Control, "Amicus Curae by Defendant," Mandamus to Compel) did not serve to exhaust the claims.  Cf. N.C. Gen. Stat. § 7A–31; N.C. Gen. Stat. § 15A –1422.  In several of his filings in this Court, Petitioner contends he exhausted his claims by raising them in an MAR filed on appeal, pursuant to N.C. Gen. Stat. § 15A-1418.  A defendant may move for appropriate relief directly in the NCCOA, when an appeal properly is pending there.  State v. Logan, 823 S.E.2d 170 (N.C. Ct. App. 2019) (citing N.C. Gen. Stat. § 15A-1418).  Petitioner may be referring to his filing titled "Amicus Curae by Defendant" (Doc. No. 1-1 at 51-54), which the NCCOA refused to consider because it was a pro se filing by someone who had counsel.  (Pet'r's Resp. to Summ. J. Mot. ¶ 2.)  A filing rejected by a state court under its own procedural rules, is not considered properly filed and therefore does not serve to exhaust state remedies.

State's Motion for Summary Judgment, and neither the Federal Rules of Civil Procedure nor the Rules Governing § 2254 Cases require a party to file a reply to the other party's response.

For these, and other reasons the Court need not explain, Petitioner is not entitled to relief on this Motion. Accordingly, it shall be denied.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment (Doc. No. 6) is **GRANTED**;

2. The Petition for Writ of Habeas Corpus (Doc. No. 1) is **DENIED**;

3. Petitioner's "Request for Execution of Writ Order of Release" (Doc. No. 12) is **DENIED**; and

4. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

Signed: March 30, 2019

Frank D. Whitney
Chief United States District Judge